John R. BROOKS, Appellant,

v.

MAGNAVERDE CORPORATION, Appellee.

No. 52589.

Court of Appeals of Oklahoma, Division No. 2.

Aug. 5, 1980.

As Corrected Aug. 21, 1980.

Released for Publication by Order of Court of Appeals Dec. 18, 1980.

Charles C. Green, Turner, Turner & Green, Oklahoma City, for appellant.

Stephen P. Friot, Spradling, Stagner, Alpern, Friot & Jones, Oklahoma City, for appellee.

BRIGHTMIRE, Presiding Judge.

A well known Oklahoma City radio sportscaster, John R. Brooks, filed this action against Pat O'Grady, a familiar name in sports circles, and MagnaVerde Corporation, a Los Angeles, California concern whose principal business is promoting prize fights.

Plaintiff sought $510,000 actual and punitive damages from both defendants because, he says, Pat O'Grady slapped him in the face during a press conference and falsely proclaimed publicly that he, Brooks, was "a filthy man" and a "son of a bitch."

MagnaVerde, after being served with process in California, made a special appearance and moved the court to quash the summons because it had committed no act in or out of Oklahoma that would enable a state court to acquire in personam jurisdiction over it in this lawsuit.

The motion was sustained and Brooks appeals contending the ruling was wrong in that it was based on a premature resolution of untried issues of fact vital to the merits of the action. We agree and reverse.

I

In his petition Brooks alleged that promoter O'Grady was the manager of his son, Sean O'Grady, a professional boxer whose ability in the ring had been sufficiently outstanding to make him a serious contender for the world featherweight title. Consequently, on January 30, 1978, Pat O'Grady and MagnaVerde "entered into a joint venture for mutual financial gain to stage a World Boxing Association featherweight championship bout between Sean O'Grady and the present champion, Cecilio Lastra, to . . . [be] held on the 5th day of February, 1978, in Oklahoma City, Oklahoma."

To promote the fight defendants scheduled a press conference for the 30th day of January, 1978, and invited the press, including Brooks, a sportscaster and member of the National Association of Sportscasters and Sportswriters.

Brooks attended the conference. While it was in progress, Pat O'Grady, without provocation, suddenly struck the radio personality "a heavy blow" in the face "with his open hand" saying "He's a filthy man . . . a son of a bitch" and, as if it were not already apparent, informed his audience "I don't like the man." This conduct, alleged Brooks, resulted in a physical battery and a slanderous attack on his character as well as that of his maternal ancestry. Brooks asked for $210,000 actual damages for personal injury, pain, humiliation and public scorn, and $300,000 punitive damages.

MagnaVerde was served by mailing a copy of the petition and summons to its service agent in Los angeles. The corporation entered a special appearance and, as we mentioned earlier, asked the court to quash the service on the ground it could not be subjected to the jurisdiction of the court for two reasons: (a) it had never done any business in Oklahoma, and (b) no relationship existed between it and Pat O'Grady that exposed it to vicarious liability for O'Grady's torts.

In support of its plea MagnaVerde submitted an affidavit of its vice–president, Frederick Landman. In substance he swore that the corporation had never maintained offices, done business, or owned any property in Oklahoma. The only contact the firm had in this state, he said, was in January and February 1978 when its consultant and a "publicist" made two trips here to plan the scheduled fight–a fight that was eventually "cancelled because the World Boxing Association would not sanction same as a championship contest." Landman denied there had ever been a joint venture or partnership between MagnaVerde and the O'Gradys nor had the parties jointly owned any property.

Further, the affiant said the only arrangement MagnaVerde had with the O'Gradys was defined in a contract dated January 19, 1978 and a letter agreement of January 24, 1978. Neither instrument, he continued, required the O'Gradys to "share

in the losses from any business enterprise" and the January 24 letter "does not provide for the sharing of any profits" by MagnaVerde Corporation and the O'Gradys "because 'net ancillary revenues', as defined in said agreement, does not include numerous expenses which would have been incurred by MagnaVerde Corporation in connection with the contest(s) contemplated by said agreement." [1]

The contract was between "MagnaVerde Promotions of L.A." and both O'Gradys. In it the parties agreed that Sean would appear at the Oklahoma City fairgrounds on February 5, 1978 and fight title holder Cecilio Lastra of Madrid, Spain for 15 rounds. The fight was to be conducted in accord with California law and refereed by officials assigned by the California State Athletic Commission and MagnaVerde was to pay Sean $25,000 on the night of the contest.

Sean also promised to appear at such reasonable times and places as MagnaVerde requested for publicity purposes. The only thing Pat O'Grady agreed to do was to authorize the corporation "to deduct from his share of the purse the same amount of money deducted from "Sean's purse–a "share" not otherwise mentioned in the document.

The letter Landman referred to bore a letterhead that read "MagnaVerde Productions a division of MagnaVerde Corp., 250 Park Avenue, New York, N. Y. 10017" It was addressed to and signed by Pat O'Grady and recited that in consideration of "MagnaVerde Productions having obtained the [scheduled] title match" the O'Gradys agreed to certain things in the event Sean was triumphant–such as the right of MagnaVerde Productions to promote Sean's next two title defenses.

## II

Although the journal entry does not disclose the basis for his ruling the trial court prepared a memorandum which does. In it the judge concluded MagnaVerde did business in this state out of which this action grew. Instead of overruling the motion to quash and accepting jurisdiction the court went further and held it to be "proper," in deciding whether he had jurisdiction, "to determine whether plaintiff has stated a cause of action against the non–resident." The court's first conclusion was correct; [2] his second one was not. The disposition went beyond the jurisdictional issue and launched prematurely into the merits of the lawsuit.

The order appealed is therefore reversed and the cause remanded with directions to overrule the plea to jurisdiction and to proceed with the further handling of the case in a legal manner.

BACON and NEPTUNE, JJ., concur.

---

1. The letter specified that O'Grady would receive $75,000 or 40 percent of the net ancillary revenues, whichever is greater, for the first match, and a little greater guarantee for the second.

   "Net ancillary revenues" was defined as "gross revenues derived from ... television, motion picture, radio and merchandising rights ... less only the actual costs and expenses of MagnaVerde Productions ... for technical pickup, telecast, transmission, communications satellite, line and conversion charges."

2. 12 O.S.1979 Supp. § 187. This, the so–called long–arm statute, grants in personam jurisdiction to our state courts over foreign firms with regard to causes of action which shall have arisen from "(1) the transaction of any business within this state; [or] (2) the commission of any act within this state."